Monte C. HANSEN, Linda Hansen, Monte T. Hansen, Duane Jess Humphries, Carol Ravarino, and Richard Ravarino, Plaintiffs,

v.

SEA RAY BOATS, INC., an Arizona corporation, Southwest Marine, an Arizona corporation, Professional Mariner, a California corporation, and Newmark Products, Inc., a California corporation, Defendants.

No. 900512.

Supreme Court of Utah.

March 11, 1992.

Anthony M. Thurber, Ronald J. Schneider, Salt Lake City, and Arthur Lee Bishop, Murray, for plaintiffs.

Robert W. Payne, Donald L. Dalton, E. Scott Savage, Salt Lake City, for Sea Ray Boats.

Todd S. Winegar, Karra J. Porter, Salt Lake City, for Southwest Marine.

Tim Dalton Dunn, Glen T. Hale, Salt Lake City, for Professional Mariner.

Dennis R. James, Stephen G. Morgan, Michael J. Cooper, Salt Lake City, for New-mark Products.

HALL, Chief Justice:

This case is before the court pursuant to rule 41 of the Utah Rules of Appellate Procedure on certification from the United States District Court for the District of Utah. In its order, the district court certified three issues of law to be determined by this court: (1) whether a person not actually threatened with bodily harm who incorrectly but reasonably believes that he or she is actually threatened with bodily harm has a claim for negligent infliction of emotional distress that satisfies the "threat of harm" requirement of section 313 of the Restatement (Second) of Torts (1965), as adopted by this court in *Johnson v. Rogers*;[1] (2) whether a person who witnesses others receiving bodily harm and fears for his or her own safety, although that person does not comprehend the source of the harm and therefore does not fear harm from that particular source, has a claim for negligent infliction of emotional distress that satisfies the "fear for one's own safety" requirement of section 313 of the Restatement (Second) of Torts (1965), as adopted by this court in *Johnson v. Rogers*; (3) if the answer to the first question is no, would the answer be yes if the person described therein witnesses a threat of bodily harm to an immediate family member.

The pertinent facts are extracted from the order of certification. This action was filed by plaintiffs Monte T. Hansen, Duane Jess Humphries, and Carol Ravarino for personal injuries they claim to have sustained when they received an electrical shock in the water behind their boat at Lake Powell, Utah. Plaintiff Richard Ravarino, though never in the water himself, claims to have received an electrical shock while standing on the fiberglass swim platform on the back of the boat for the purpose of assisting Humphries from the water into the boat. Plaintiff Linda K. Hansen did not enter the water, come into contact with any of the four plaintiffs who claim to have received an electrical shock, or receive an electrical shock herself. She witnessed the three plaintiffs named above as they received the electrical shock, and one of the plaintiffs, Monte T. Hansen, is her son. Mrs. Hansen claims that at the time she witnessed the harm to her son, she experienced a general "global" kind of fear, although she herself was not in fear of drowning or receiving an electrical shock.

1. 763 P.2d 771 (Utah 1988).

Defendants moved for partial summary judgment, claiming that under our decision in *Johnson*, Mrs. Hansen failed to state a claim for negligent infliction of emotional distress because she was never in danger of drowning or receiving an electrical shock, nor did she fear at the time that she would drown or receive an electrical shock. Mrs. Hansen claims that the circumstances of her case bring her claim for negligent infliction of emotional distress within the parameters of section 313 of the Restatement, as adopted in *Johnson*.[2]

In addition to the facts in the certification order, plaintiffs have set forth in their brief specific facts concerning the incident. These facts, however, appear designed to persuade this court that Mrs. Hansen was actually in danger of electrical shock at the time she witnessed the distress of the others. The order of certification makes it clear that Judge Greene of the United States District Court has already considered whether Mrs. Hansen was in danger and has determined that she was not.[3] In light of this factual determination, we answer the questions of law presented to us.

▅▅▅ In *Johnson*, this court delineated the basis of recovery for negligent infliction of emotional distress.[4] In the main opinion,[5] Justice Durham discussed the development of the law in this area and noted the several positions that courts in this country have taken with regard to recovery for emotional distress. Justice Durham examined negligent infliction of emotional distress claims in terms of victim and bystander recovery.[6] Negligent infliction of injury occurs when a person breaches a duty of care that he or she owes to other persons. Those persons within the scope or "zone" of the defendant's duty are classed as "victims" of an accident, whether or not they incur injuries themselves. "Bystanders" are those persons outside the scope of the defendant's duty of care who may witness or be affected by the accident which has resulted from the breach.[7] In *Johnson*, a majority of this court adopted the "zone of danger" theory of recovery for negligent infliction of emotional distress.[8] This theory, found in section 313 of the Restatement,[9] allows recovery only for those who are "victims" of another's breach of duty.[10] In other words, only those placed in actual peril as a result of a defendant's breach of duty are allowed recovery for negligent infliction of emotional distress. Those outside the zone of danger created by the defendant are not allowed recovery for the emotional distress caused by witnessing the injury of others.[11] We adopted the Restatement's zone of danger

---

**2.** *Id.* at 785.

**3.** Question 1 of the order specifies the facts in its opening: "Whether a person not actually threatened with bodily harm...." The other questions in the order also rely on the factual proposition that Mrs. Hansen was not in actual danger at the time of the incident.

**4.** *Johnson*, 763 P.2d at 785.

**5.** The main opinion in *Johnson v. Rogers*, written by Justice Durham, was not joined by a majority of the court on the issue of recovery for negligent infliction of emotional distress. The majority opinion on this issue is found in the concurring opinion of Justice Zimmerman, joined by Chief Justice Hall, Associate Chief Justice Howe, and Justice Stewart. *See id.* at 784 n. 1 (Zimmerman, J., concurring).

**6.** *Id.* at 781–82.

**7.** *Id.*

**8.** *Id.* at 785.

**9.** Section 313 of the Restatement (Second) of Torts (1965) provides:

(1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor

  (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and

  (b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.

(2) The rule stated in Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other.

**10.** *See Johnson*, 763 P.2d at 782.

**11.** *Id.*

approach in *Johnson* as a reasonable compromise between allowing recovery for injured plaintiffs and the interests of the courts and the public in predictable rules.[12]

■ Subsection (1) of section 313 imposes liability on a defendant who causes emotional distress if the defendant knows that his or her conduct involved an unreasonable risk of emotional distress "otherwise than by knowledge of the harm or peril of a third person." As interpreted by the comments to the section and by case law following the Restatement's zone of danger rules, this section allows recovery for a plaintiff who was personally within the zone of danger and feared physical impact or peril due to the negligent acts of the defendant, even though the plaintiff was not struck or physically injured during the occurrence.[13] A plaintiff who was within the zone of danger may recover for emotional distress caused by fear for personal safety even though the plaintiff suffered no physical harm as a result of the defendant's breach of duty.

Subsection (2) of section 313 is clear in its requirement that those seeking to recover for emotional distress caused by witnessing injury to others must be within the zone of danger created by the defendant's breach of duty.[14] The comments to section 313 further articulate and define the zone of danger concept and the application of its rules. Comment d notes that the rules in section 313 have "no application where the emotional distress arises solely because of harm or peril to a third person, and the negligence of the actor has not threatened

the plaintiff with bodily harm in any other way." [15]

■ A reading of the two subsections in section 313 shows that the subsections contain the requirement that a plaintiff be within the zone of danger to recover for emotional distress caused by an accident if the plaintiff is not physically injured in the accident. Thus, where the plaintiff is not actually in the zone of danger created by the defendant's negligent conduct, emotional distress arising from witnessing another's harm or peril is not recoverable under the Restatement or under our holding in *Johnson.*

Plaintiffs ask us to expand the zone of danger rule found in the Restatement to include recovery for persons who are not actually within the zone of danger but who reasonably and subjectively believe they are in danger. The Restatement rule, as written and interpreted by courts who follow the zone of danger rule, rationally limits the scope of claims for negligent infliction of emotional distress and provides a workable framework for the courts and future parties to regulate their conduct. While it is true that the rule may sometimes produce seemingly arbitrary results from the standpoint of the plaintiffs, from the standpoint of the defendants, the rule provides the most workable and understandable limit of potential liability. The zone of danger rule complements the basic requirement that persons exercise reasonable care to protect others from injury. Those who breach their basic duty of care to others will be required to compensate those who are injured, even when the inju-

---

**12.** *Id.* at 785.

**13.** Although a literal reading of subsection (1) does not appear to require that the plaintiff be within the zone of danger in order to obtain recovery if he or she feared personal harm, we believe that the case law interpreting section 313, which requires that the plaintiff be within the zone of danger, is the proper limitation on recovery. Therefore, we require that the plaintiff be within the zone of danger. *See, e.g., Dobelle v. National R.R. Passenger Corp.,* 628 F.Supp. 1518, 1525 (S.D.N.Y.1986) (applying Pennsylvania law); *Keck v. Jackson,* 122 Ariz. 114, 593 P.2d 668, 670 (1979); *Rickey v. Chicago Transit Auth.,* 98 Ill.2d 546, 75 Ill.Dec. 211, 457

N.E.2d 1, 5 (1983); *Hunt v. Chettri,* 158 Ill. App.3d 76, 110 Ill.Dec. 293, 294, 510 N.E.2d 1324, 1325 (1987). *See generally Bowman v. Williams,* 164 Md. 397, 165 A. 182, 183 (1933); *Tobin v. Grossman,* 24 N.Y.2d 609, 301 N.Y.S.2d 554, 559, 249 N.E.2d 419, 424 (1969); *Scarf v. Koltoff,* 242 Pa.Super. 294, 363 A.2d 1276, 1280 (1976); *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84, 90 (1970); Winter, *A Tort in Transition: Negligent Infliction of Mental Distress,* 70 A.B.A.J. 62 (1984).

**14.** *See* Restatement (Second) of Torts § 313(2) (1965).

**15.** *See id.* at cmt. d.

ries are not caused by direct impact, but by the operation of foreseeable emotional distress. Those plaintiffs to whom a defendant has not breached the duty of care will be denied recovery, even if they are bystanders who witness the injury of another to whom the defendant has breached the duty.

■ The scope of a defendant's duty is limited to injuries that are the foreseeable result of his or her carelessness. While a defendant may be able to foresee the harm to direct victims if due care is not taken to prevent injury, he or she cannot foresee the extent to which bystanders or witnesses to an accident will react to the events. To place a duty upon a defendant to protect bystanders who are not in danger of bodily injury from purely emotional injury is to allow potentially unlimited recovery. Although modern psychological techniques have made the diagnosis and treatment of emotional injury more objectively verifiable, these techniques do not aid the defendant in determining or foreseeing what types of events might cause emotional injury to potential plaintiffs near an accident scene. Therefore, the foreseeability of emotional injury as the only limit on recovery for that injury is speculative at best and creates an unjustified risk for a defendant to bear when he or she has not created a risk of bodily injury to the plaintiff.

■ Further, the zone of danger rule comports with the basic tort principle that a person may not recover for vicarious injuries:

"A plaintiff may only sue in his own right for a wrong personal to him, and not as the vicarious beneficiary of a breach of duty to another." A plaintiff in the zone of danger is already threatened with physical injury as a result of defendant's negligence. Once that initial breach of duty is established, the issue then "becomes merely a matter of the unexpected manner in which the foreseeable harm has occurred." [16]

Allowing recovery to those plaintiffs who are not within the zone of danger although they may believe they are in danger would therefore extend to them vicarious liability for a defendant's breach of a duty to third persons. The zone of danger rule follows accepted principles of a defendant's duty and a plaintiff's right of recovery for personal, not vicarious, injury. Therefore, we adhere to the zone of danger concept as set forth in the Restatement and as adopted by this court in *Johnson*. We decline to extend recovery outside the zone of danger and decline to require a defendant to compensate a plaintiff for fear in situations where the defendant has not breached a duty of care owed to the plaintiff.

Plaintiffs have argued that the court should adopt the standards set forth in section 436 of the Restatement (Second) of Torts (1965) for determining the availability of Mrs. Hansen's claim for emotional distress.[17] Plaintiffs contend that the provisions of section 436 are more applicable to the factual situation of their case and should therefore be applied to determine the viability of their claims. We need not consider the propriety of adopting section 436 as a measure of liability because our review of that section prompts the conclu-

16. *Dobelle v. National R.R. Passenger Corp.*, 628 F.Supp. at 1525 (quoting *Bowman v. Sears, Roebuck & Co.*, 245 Pa.Super. 530, 369 A.2d 754, 757 (1976); W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* § 54, at 365 (5th ed. 1984)).

17. Section 436 states:
(1) If the actor's conduct is negligent as violating a duty of care designed to protect another from a fright or other emotional disturbance which the actor should recognize as involving an unreasonable risk of bodily harm, the fact that the harm results solely through the internal operation of the fright or other emotional disturbance does not protect the actor from liability.

(2) If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.

(3) The rule stated in Subsection (2) applies where the bodily harm to the other results from his shock or fright at harm or peril to a member of his immediate family occurring in his presence.

sion that plaintiffs would not be entitled to recover under the rules set forth therein.

Subsections (2) and (3) of section 436, upon which plaintiffs ask us to rely, discuss emotional distress caused by witnessing harm to another person. These sections specify that those who suffer emotional distress merely because of shock at witnessing another's peril may recover for their emotional injury if they were within the zone of danger at the time of the incident, if they perceived the danger to the third person, and if the third person actually injured was their close relative.

These rules are distinguishable from section 313 because they allow recovery for a plaintiff who does not suffer fear of injury to his or her person but who merely fears injury to a relative. However, the sections parallel section 313's requirement that one who witnesses harm to another must also be within the zone of danger in order to recover for emotional distress. Therefore, both section 313 and section 436 allow recovery only when the plaintiff is in the zone of danger. Because the certified questions indicate that Mrs. Hansen was not in actual danger during the incident in question, the application of section 436 would not change the result in this case.

■ Finally, plaintiffs urge the application of the rule adopted by the state of California in *Dillon v. Legg*.[18] In *Johnson*, we outlined the principles and effect of *Dillon*, noting that *Dillon* allows recovery for bystanders who are at the scene of an accident and witness injury to a close relative.[19] It is arguable that plaintiffs have met the *Dillon* requirements in this case. Although many states have adopted *Dillon*'s rules as a framework for recovery in emotional distress cases, we believe that the framework of *Dillon* is artificial and unworkable.

Recovery under *Dillon* is not based on the duty of a defendant or on the foreseeability of the harm caused to a plaintiff, but on the fortuitous circumstances present at the time of the incident. A defendant has no way of knowing the number and proximity of bystanders to any given accident caused by his or her negligence. Indeed, the California Supreme Court has noted, "[T]here are clear judicial days on which a court can foresee forever and thus determine liability but none on which that foresight alone provides a socially and judicially acceptable limit on recovery of damages for that injury." [20] Further, recovery under *Dillon* is not based on any breach of a defendant's duty to a plaintiff, but is based on vicarious recovery for the breach of a duty to another. Because this vicarious recovery is too attenuated from the principle of duty to allow for reasonable limitations on recovery by a plaintiff, we decline to follow the *Dillon* rule and to allow recovery for the plaintiff outside the zone of danger even in those instances where the plaintiff may witness harm to others.

■ Applying these principles to the certified questions, we must answer all three in the negative. Question one requests that we determine the liability for plaintiff's emotional distress when she was outside the zone of danger but, nevertheless, reasonably feared for her own safety. Following our holding in *Johnson*,[21] plaintiff Linda K. Hansen, who feared for her own safety but was not objectively within the zone of danger created by defendants' breach of duty, may not recover for emotional distress caused by her fright.

■ The answer to question two must also be answered in the negative because plaintiff was outside the zone of danger. Although she experienced fear for her own safety from some source, that fear was not supported by an objective danger created by defendants' breach of duty to her. Therefore, her fear for her own safety, from whatever source, did not place her within the zone of danger.

---

18. 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968).

19. *Johnson*, 763 P.2d at 783.

20. *Thing v. La Chusa*, 48 Cal.3d 644, 257 Cal. Rptr. 865, 771 P.2d 814, 830 (1989).

21. *Johnson*, 763 P.2d at 785.

In response to question three, a plaintiff may only recover for trauma caused by witnessing injury to a relative if the plaintiff is also within the zone of danger. This is clearly enunciated in comment d to section 313 of the Restatement and inherent in the zone of danger rule. Therefore, the answer to question three is also negative.

The zone of danger requirement for recovery for negligent infliction of emotional distress should not be expanded to allow a plaintiff outside the zone of danger to recover for emotional harm caused by witnessing injury to others. We decline to extend recovery to those outside the zone of danger even though they may reasonably fear for their own safety and even though they may witness injury to a close relative.

HOWE, Associate C.J., and ZIMMERMAN, J., concur.

STEWART, J., concurs in the result.

DURHAM, Justice: (concurring in the result).

Although I continue to hold the views expressed in my opinion in *Johnson v. Rogers*, 763 P.2d 771 (Utah 1988), I defer to the effect of the majority vote in that case as precedent and concur in the result.